# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH ANN TORNABENE, | ) | CASE NO. 5:16-cv-30 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| TUSCARAWAS COUNTY HEALTH | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on two motions: (1) the motion of defendant Tuscarawas County Health Department ("defendant" or "Health Department") to strike the expert report of plaintiff Judith Ann Tornabene ("plaintiff" or "Tornabene") (Doc. No. 22 ["Mot."])[1]; and (2) defendant's motion for summary judgment (Doc. No. 25 ["MSJ"])[2]. Both motions are fully briefed and ripe for ruling. For the reasons that follow: (1) defendant's motion to strike is granted to the extent set forth herein; and (2) defendant's motion for summary judgment is granted.

## I.   BACKGROUND

Many of the undisputed facts in this case are recited in the complaint. (Doc. No. 1 ["Compl."].) Plaintiff was born on May 15, 1952. (*Id*. ¶ 2.) It is undisputed that plaintiff, a licensed nurse in the State of Ohio, was employed by defendant from 1994 until she was

---

[1] Plaintiff opposed defendant's motion to strike (Doc. No. 27 ["Opp'n"]), and defendant filed a reply (Doc. No. 28 ["Reply"]).

[2] Plaintiff opposed defendant's summary judgment motion (Doc. No. 32 ["Opp'n MSJ"]), and defendant filed a reply (Doc. No. 33 ["Reply MSJ"]).

terminated on July 7, 2015. (*Id.* ¶¶ 2, 5, 6.) It is also undisputed that Katie Seward[3] was hired by the Health Department as its Executive Director in July 2014, which was consolidated with the position of Health Commissioner in November 2014. (Doc. No. 24-3 (Deposition of Katie Seward ["Seward Dep."]) at 634[4]; 709-10.) There is no dispute that when Seward became plaintiff's supervisor in 2014, Seward was approximately 29 years old. Tornabene was the Director of Nursing for the Health Department, a position she had held since 2011, and was over 60 years old. (Compl. ¶ 5.) The parties agree that beginning in early 2015, plaintiff became subject to discipline and warnings from Seward regarding her employment, was placed on administrative leave, and ultimately terminated on July 7, 2015. (*Id.* ¶ 6.)

The parties dispute the reasons for Tornabene's discipline and termination. Plaintiff alleges that she was terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA"). Defendant denies this, and contends that plaintiff was terminated because of poor performance. Additional facts will be discussed later in this opinion as relevant and necessary for the Court's analysis.

The Court established a case management schedule which provided for expert reports and discovery. Plaintiff identified Dennis Doverspike, Ph.D. ("Doverspike") as her expert (Doc. No. 20), and defendant's motion seeks to strike his report.[5] The Court conducted a hearing on

---

[3] Plaintiff initially named Seward as a defendant in the complaint, alleging in count two that Seward violated Ohio's age discrimination laws. Seward was terminated as a defendant, however, when plaintiff voluntarily dismissed count two of the complaint. (*See* Doc. No. 12 and Non-document Order dated March 8, 2016).

[4] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

[5] Doverspike's expert report (Doc. No. 27-2 ["Report"]) and supplemental report (Doc. No. 27-3 ["Supp. Report"]) are attached to plaintiff's opposition to defendant's motion to strike. Doverspike's report was initially, but incorrectly filed, at Doc. No. 19. Plaintiff subsequently refiled the reports with her opposition to defendant's motion to strike.

defendant's motion, both sides argued their positions, and the Court took the matter under advisement. (*See* Minute Order, December 21, 2016.)

The Court will address defendant's motion to strike before resolving defendant's summary judgment motion.

## II. DEFENDANT'S MOTION TO STRIKE

Defendant seeks to strike the following opinion in Doverspike's report, arguing that his opinions are impermissible conclusions that go directly to the ultimate legal issue in this case— whether the Health Department discriminated against Tornabene on the basis of age when it terminated her employment:

- "I am of the opinion that the data, documents, evidence, and scientific literature on the psychology of age support the Plaintiff's allegation of age discrimination based on my finding that the decision making by Katie Seward and Tuscarawas was a function of age and age stereotypes."

- "I conclude and am of the opinion that discrimination on the basis of age did occur in the treatment of Judith Ann Tornabene by Tuscarawas County Health Department, with such discrimination based on age resulting in the termination of Tornabene."

- "The decisions regarding the treatment of Tornabene by Seward and the Tuscarawas County Health Department were a function of age and age stereotypes."

***

- "Thus, discrimination based on the protected class factor of age over 40 occurred in the decision to terminate Tornabene."

(Mot. at 184-85, quoting the Report.)

Defendant also takes issue with two hypothesis in Doverspike's report, arguing that the first is not based on any evidence reviewed in this case, and the second addresses

the central issue in the case—whether age discrimination was the "but for" cause of

Tornabene's termination:

> 1. Age stereotypes exist and lead to discrimination against older workers when making subjective employment decisions.

> 2. The decisions regarding the treatment of Tornabene by Seward and the Tuscarawas County Health Department were a function of age stereotypes; thus, discrimination based on age occurred in the decision making process with regard to the evaluation of the behaviors engaged in by Tornabene.

(*Id*. at 185 (quoting the Report).)

## A. Expert Opinions

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> **(b)** the testimony is based on sufficient facts or data;
>> **(c)** the testimony is the product of reliable principles and methods; and
>> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

District courts serve a "gatekeeping" function to exclude unreliable expert testimony in

scientific cases. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786. 125 L.

Ed. 2d 469 (1993). In addition to being reliable, the expert's testimony must assist the trier of

fact. Fed. R. Evid. 702. "This requirement has been interpreted to mean that scientific testimony

must 'fit' the facts of the case, that is, there must be a connection between the scientific research

or test result being offered and the disputed factual issues in the case in which the expert will

testify." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert,* 509 U.S. at 592).

This gatekeeping function applies to expert testimony in both scientific and non-scientific cases.

*See Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994).

The Court has discretion in exercising this gatekeeping function to determine whether a proposed expert's testimony is admissible, based on whether it is both relevant and reliable, and will assist the trier of fact. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007) (citation omitted); *Kilgore v. Carson Pirie Holdings, Inc.* 205 F. App'x 367, 370 (6th Cir. 2006) (citing *Kumho,* 526 U.S. at 141, 152). "[U]nder *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592, n.10).

## B. Doverspike's Opinions

### 1. The ultimate legal issue

In general, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However,

> [a]lthough an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed. R. Evid. 704(a), the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was *deliberately indifferent* to the welfare of its citizens.

*Berry*, 25 F.3d at 1353 (emphasis in original).

The Court's duty to exclude legal opinions or legal conclusions offered by experts that the Court deems improper is independent of Rule 704. *Hernandez v. City of Findlay*, No. 3:14

CV 250, 2016 WL 557773, at *2 (N.D. Ohio Feb. 12, 2016) (citing *Ross Bros. Constr. Co. v. MarkWest Hydrocarbon, Inc.*, 196 F. App'x. 412, 415 (6th Cir. 2006)). As the Sixth Circuit explained:

> Ross Brothers admits that Boggs [plaintiff's expert] offered opinion testimony on the ultimate issue in the case, but argues that Fed. R. Evid. 704 "permits a witness to testify in the form of an opinion or inference to an 'ultimate issue to be decided by the trier of fact.'" But Ross Brothers focuses on the wrong rule of evidence. The district court did not exclude Bogg's opinion testimony on the theory that it violated Fed. R. Evid. 704; it was excluded because the testimony contained numerous conclusions of law rather than fact. For example, Boggs proposed to testify that "MarkWest's tender of partial payment of the invoiced amount [] was not made in good faith, [and] did not have a good faith basis." This is not a factual conclusion within the expert's competence; it is a legal conclusion. This circuit has held that a district judge has the discretion—and the duty—to exclude "legal opinion" it deems improper, and this stands independent of Fed. R. Evid. 704.

*Ross Brothers*, 196 F. App'x at 415 (citing *Stoler v. Penn Cent. Transp. Co.,* 583 F.2d 896, 899 (6th Cir. 1978)).

Defendant argues that Doverspike's opinion regarding the ultimate legal issue in the case—whether plaintiff's termination was the result of age discrimination—is inadmissible and must be stricken. (Mot. at 186.) At the hearing,[6] plaintiff conceded that Doverspike's opinion regarding the ultimate legal issue in this case is inadmissible, whether for purposes of trial or summary judgment. The Court ruled from the bench that Doverspike's opinion that plaintiff was terminated as a result of age discrimination is stricken, and the Court memorializes that ruling in this memorandum opinion.

---

[6] Plaintiff also concedes in her brief that expert testimony in the form of a legal conclusion is inadmissible. (Opp'n at 1063, citing *Torres v. Cnty. of Oakland*, 758 F.3d 147 (6th Cir. 1985).)

### 2. Doverspike's other opinions

With respect to Doverspike's other opinions, plaintiff contends that defendant overstates its argument that Doverspike's report must be completely excluded. Plaintiff points out that "several" of Doverspike's opinions do not embrace the ultimate legal issue, including his opinions: (1) that age stereotypes exist; (2) that the age difference between plaintiff and her supervisor, Seward, "is significant"; (3) that Seward's positive performance evaluation of plaintiff in October 2014 is evidence of pretext; and (4) failure to use progressive discipline before terminating plaintiff is evidence of pretext. (*See* Opp'n at 1062.)

In reply, defendant contends that (1) the existence of age stereotypes is a function of Doverspike's research and that hypothesis was not tested to determine its applicability in this case; (2) the jury does not need the assistance of an expert to understand the age difference between Seward and Tornabene; (3) Seward evaluated Tornabene in October 2014 before plaintiff's performance problems emerged; and (4) as an unclassified employee, Tornabene was not legally entitled to progressive discipline, and even if she were, plaintiff's conduct was so egregious that termination was warranted. (Reply at 1188-89.)

These issues were addressed at the hearing. Plaintiff's counsel conceded that an expert is not needed to assist the jury regarding the age differential between Seward and plaintiff, and that whether plaintiff was entitled to progressive discipline was a legal issue for the Court. Doverspike's opinions regarding these issues are stricken.

With respect to age stereotyping and plaintiff's performance evaluations, plaintiff argues that Doverspike's opinions on these issues do not address the ultimate legal conclusion in the case, but the issue of pretext. Plaintiff maintains that Doverspike's opinions in this regard will

assist the jury in assessing whether age stereotyping played a role in defendant's decision-making regarding plaintiff's performance and employment, and in determining whether age discrimination was the "but for" cause of plaintiff's termination.

### *Analysis*

Expert testimony is only admissible if it is both relevant and reliable. *Daubert,* 509 U.S. at 589; *Kumho,* 526 U.S. at 147. Defendant argues that Doverspike's testimony regarding age stereotyping is neither reliable[7] nor relevant. Testimony is relevant if there is a connection between the expert testimony and the disputed factual issues in the case. *Pride,* 218 F.3d at 578.

Expert testimony regarding stereotyping due to age, sex, or race, is not *per se* excludable as irrelevant. *See E.E.O.C. v. Wal-Mart Stores, Inc.*, No. CIVA 6:01-CV-339-KKC, 2010 WL 583681, at *3 (E.D. Ky. Feb. 16, 2010) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 235-36, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (permitting expert testimony that partner's sex-based comments showed evidence of sex-stereotyping in partnership decisions relevant to the issue of intentional discrimination)). That said, courts have arrived at different conclusions regarding the admissibility of expert testimony regarding stereotyping in discrimination cases. *See e.g. id.* at *3-4 (testimony that simply offers a "plausible" explanation defendant's employment actions is more prejudicial than probative and risks jury confusion); *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208, 215-16 (D. Mass. 2009) (expert testimony

---

[7] Testimony is reliable if the witness is qualified on the basis of "knowledge, skill, experience, training or education." *Pride,* 218 F.3d at 577 (citing Fed. R. Evid. 702). Doverspike is a professor of psychology and the Director of the Center for Organizational Research at the University of Akron, and a board certified psychologist in the area of industrial and organizational psychology. (*See* Doc. No. 27-1 at 1067-68.) His Ph.D. dissertation analyzed internal sex bias in a job evaluation instrument, and his Master's thesis addressed the effect of gender and name style on a personnel manager's response to an applicant's resume. (*Id.* at 1068.) He has taught, performed research, and published extensively regarding employment discrimination and personnel selection and evaluation. (*See generally, id.*) For the purpose of analyzing defendant's summary judgment motion, the Court will consider Doverspike qualified to render an opinion regarding age stereotyping in this case.

describing how stereotyping occurs and noting that the statements and treatment described by plaintiff are consistent with that research, is admissible) (collecting cases admitting expert testimony on stereotyping); *Childers v. Trustees of the Univ. of Pennsylvania*, No. CV 14-2439, 2016 WL 1086669, at *5 (E.D. Pa. Mar. 21, 2016) ("Courts are divided about whether [expert] testimony [regarding stereotyping] is admissible or not.") (citing cases).

In this case, there is no evidence of comments by defendant or Seward suggesting that age stereotyping may be afoot.[8] Were this case to proceed to trial, the Court would have serious reservations about the admissibility of Doverspike's testimony concerning age stereotyping because of the risk of prejudice and jury confusion. *See Wal-Mart Stores, Inc.*, 2010 WL 583681, at *3 (where expert points to no evidence of intentional acts by defendant based on gender stereotyping, but opines that gender stereotyping can be subconscious, such testimony is more prejudicial than probative because jury may presume such stereotyping exists at Wal-Mart and require Wal-Mart to prove a negative). But the Court need not decide the issue of admissibility now, because even if the Court considers Doverspike's testimony regarding age stereotyping, it will not affect the outcome of the Court's ruling. Accordingly, defendant's motion to strike Doverspike's report is granted to the extent set forth herein.

---

[8] *See e.g. Grzybowski v. DaimlerChrysler Servs. N. Am., L.L.C.*, No. 05-71286, 2006 WL 1374050, at *5, n.7 (E.D. Mich. May 17, 2006) (defendant's belief that younger worker would be more willing to take on new responsibility and stay on top of system changes and is a "fast learner"); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (age stereotyping remarks such as referring to plaintiff as "old fart" and wearing "old man clothes" sufficient to establish plaintiff's initial burden under *McDonnell Douglas*) (citations omitted); *Irvin v. Ascension Par. Sch. Bd.*, No. CV 15-518-JWD-EWD, 2017 WL 354854, at *17 (M.D. La. Jan. 24, 2017) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005) (holding that vice president's e-mail announcing the continuation of his "recruiting plan" to "strategically hire some younger engineers and designers to support and be entered by the current staff," along with "age stereotyping remarks" such as claiming an employee had a "'low motivation to adapt' to change" and describing him as "inflexible," "not adaptable," and possessing a "business-as-usual attitude," was evidence of discrimination)).

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on plaintiff's federal age discrimination claim. Briefly, defendant argues that plaintiff was terminated because of substantial performance problems, and plaintiff cannot overcome summary judgment with generic age discrimination allegations based upon age stereotyping and the difference in age between plaintiff and Seward. (*See* MSJ at 1018.)

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. It is the nonmoving party's duty to point out specific facts in the record that create a genuine issue of material fact; the trial court does not have a duty to search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*,

863 F.2d 1029, 1034 (D.C. Cir. 1988)); *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted).

The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L.Ed. 2d 695 (1990).

"Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.* 536 F. App'x. 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street*, 886 F.2d at 1477 (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> [Summary judgment is required] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. ADEA Claim

An ADEA plaintiff will survive summary judgment if she presents direct evidence that the adverse employment action was taken because of her age. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence of discrimination is evidence that, if believed, proves a fact in issue without an inference or presumption. *Rowan v. Lockheed Martin Energy Sys. Inc.,* 360 F.3d 544, 548 (6th Cir. 2004). It is undisputed that, in this case, there is no direct evidence of age discrimination. (*See* Doc. No. 24-1 (Deposition of Judith Ann Tornabene ["Tornabene Dep."]) at 228-30; 444-45.)

Direct evidence is not necessary, however, to prove age discrimination. A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009) (citation omitted). Plaintiff will survive summary judgment if she can show a genuine issue of material fact regarding circumstantial evidence of age discrimination under the familiar three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir. 1986) ("The evidentiary guidelines

governing proof in discrimination cases were first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (construing Title VII), and the same analysis is generally applied in ADEA cases.") (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)); *Geiger*, 579 F.3d at 622 (applying *McDonnell Douglas* to circumstantial evidence claims in ADEA cases).

Under the *McDonnell Douglas* burden shifting analysis, the "burden of production rests first on the plaintiff to establish [a] *prima facie* case, then on the defendant 'to articulate some legitimate non-discriminatory reason for the employee's [termination],' and finally again on the plaintiff to show that the defendant's reasons were pretextual." *Chappell*, 803 F.2d at 265 (citations omitted). Although the burden of production shifts between plaintiff and defendant, the burden of persuasion remains at all times with the plaintiff. *Id.* (citing *Burdine*, 450 U.S. at 254-55).

In order to satisfy that burden of persuasion, plaintiff must show that her age was the "but for" cause of the defendant's adverse employment action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). "[I]t is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross,* 557 U.S. at 177-78) (further citation omitted).

### 1.    Prima facie case

To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff must establish four well-known elements: 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class. *Geiger*, 579 F.3d at 622 (citations omitted). Defendant concedes that plaintiff meets the first three elements of her prima facie case—plaintiff was 63 years old on March 25, 2015 when she was placed on paid administrative leave before she was terminated, and was qualified for her position as the director of nursing. (MSJ at 1036.)

Defendant does not concede the fourth element. (*Id.*) In this case, Diane Rusznak, who was 73 years old at the time, was appointed to replace plaintiff as the interim director of nursing. (Doc. No. 25-1 (Declaration of Katie Seward ["Seward Dec."]) ¶¶ 4, 7.) Seward avers that she offered the position to Rusznak on a permanent basis, but Rusznak declined. (*Id.* ¶ 8.) Amy Kaser, who was 51 years old at the time, was ultimately named director of nursing as plaintiff's permanent replacement effective November 1, 2015. (*Id.* ¶¶ 5, 9.) Defendant argues that because defendant sought to replace plaintiff with a significantly older employee, plaintiff cannot establish the fourth element of her prima facie case. (MSJ at 1036-37.)

But viewing the evidence in a light most favorable to the plaintiff, as the Court must on summary judgment, the Court will focus on the age of Tornabene's actual permanent replacement, not the age of the individual that Seward claims she desired to hire. Plaintiff can typically satisfy the fourth prong by showing that she was replaced with a younger individual, so long as the difference in age is significant. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003). "Age differences of ten or more years have generally been held to be

sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case." *Grosjean*, 349 F.3d at 336 (citation omitted).

In this case, the individual selected to permanently replace Tornabene as director of nursing was more than 10 years younger than plaintiff. Therefore, for the purpose of this analysis, the Court finds that plaintiff has satisfied the fourth element of her prima facie case of age discrimination. Thus, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination.

### 2. Legitimate non-discriminatory reason for termination

Defendant articulates a number of performance-based reasons for plaintiff's termination, including neglect of job duty, inefficiency, insubordination, failure to cooperate with other employees, failure to carry out job assignments, and causing distractions and disruptions on the job. (MSJ at 1039, citing Seward Dep. at 810.) These reasons are listed in "Statement of Charges for Discipline – Judy Tornabne" ("Statement") prepared by Seward. (Seward Dep. at 853-54; Doc. No. 24-4 at 996-97 (Deposition Exhibit 4 to Seward's deposition ["Ex. 4."]).)

Plaintiff concedes that defendant has satisfied its burden of production to articulate legitimate, non-discriminatory reasons for her termination. (Opp'n MSJ at 1207, citing Seward Dep. at 853-57; Ex. 4.) Thus, the burden shifts back to plaintiff to demonstrate pretext.

### 3. Pretext

In order to avoid summary judgment on this prong of the *McDonnell Douglas* analysis, plaintiff must show that there is a genuine dispute of material fact from which a jury could reasonably find that the Health Department's stated reasons for her termination are pretextual, and that the real reason is unlawful age discrimination. In the Sixth Circuit, "a plaintiff can show

pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (footnote omitted). These three categories are not rigid or limiting factors for determining pretext, but rather guidelines for focusing on the ultimate inquiry: did defendant terminate plaintiff for the stated reasons, or did defendant make up those reasons to conceal unlawful age discrimination. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citing *Chen,* 580 F.3d at 400, n.4); *Spellman v. Ohio Dep't of Transp.*, –F. Supp. 3d–, 2017 WL 1093281 (S.D. Ohio Mar. 22, 2017) (same) (quoting *Tingle,* 692 F.3d at 530).

Plaintiff contends that the record, viewed indulgently in her favor, supports all three of the above as a basis upon which a reasonable jury could conclude that defendant's stated reasons for her discipline and termination are a pretext for unlawful age discrimination. (Opp'n MSJ at 1209-10.)

### *Proffered reasons have a basis in fact*

Mismanagement of grants and programs is a significant aspect of the evidence underlying Seward's statement of charges against Tornabene. Specifically, defendant states that Tornabene: (1) mismanaged the vaccines for children (VCF) program which resulted in the administration of free vaccines from the State of Ohio to ineligible recipients, and improper billing for free vaccines, totaling $60,000 which must be repaid to the State (Seward Dep. at 821-23); (2) failed to timely submit accurate grant documentation for the child and family health services program resulting in a loss of $21,000 in funding to the Health Department for two consecutive years (*Id.* at 886, 900-01); (3) failed to timely submit required reports and information regarding

defendant's public health emergency preparedness, resulting in the withholding of $36,000 by the State of Ohio (*Id*. at 662, 881, 885); and (4) generally provided deficient oversight of the Health Department's grants and programs, including: (a) child and family health services (which received the lowest composite score of any health department in the state (*Id*. at 900; Doc. No. 24-2 at 533-34)); (b) public health emergency preparedness (failed to timely submit a response and plan after a site visit by the State on June 4, 2014 (Tornabene Dep. at 387-89)); (c) reproductive health and wellness (non-responsive to communications from the Ohio Department of Health regarding site visits (Seward Dep. at 665)); and (d) immunization action plan (reporting uncompleted work to the ODH as completed (*Id*. at 667-68)).

Other performance issues cited by defendant include: (1) failure to meet deadlines (Tornabene Dep. at 382-384, 388-89); (2) failure to respond to emails (Seward Dep. at 779-80; Tornabene Dep. at 357-58); (3) tardiness and attendance at meetings (Seward Dep. at 862-83; Tornabene Dep. at 426-27); (4) releasing employee satisfaction survey results in direct contravention to Seward's instructions (Seward Dep. at 870-71; Tornabene Dep. at 413-14); and (5) complaints from co-workers (*see* Doc. No. 24-2 at 560, 561, 562-63, 564, 565-75).

Plaintiff offers no evidence that the above-listed conduct[9] did not actually occur or is genuinely in dispute. Rather, plaintiff's arguments focus upon the second and third factors supporting pretext.

---

[9] For the purpose of brevity, the Court summarizes defendant's detailed explanation of plaintiff's poor performance contained in its motion for summary judgment (Mot. at 1021-33), which the Court fully considered and incorporates herein.

*Proffered reasons motivated defendant & articulated reasons are sufficient to warrant termination*

Plaintiff contends that the above-listed performance issues did not motivate defendant to terminate plaintiff and are insufficient to warrant termination. The only evidence advanced by plaintiff to support this argument is the expert report of Doverspike, from which plaintiff contends a jury could reasonably conclude in her favor that age discrimination was the "but for" cause of her termination.

Doverspike generally opines that age stereotyping may occur by younger supervisors of older workers and permeates an employer's perceptions of an older worker's performance. In this case, Doverspike posits that the issue is not "whether certain behaviors occurred or were engaged in by the Plaintiff[,]" but whether older workers are judged more severely than younger workers, and Tornabene was judged too severely because of her age. (Report at 1144, 1146.) Doverspike offers no examples of younger Health Department employees comparable to Tornabene who engaged in the same behavior, but received less severe discipline.

In support of his opinion that Tornabene's poor performance problems was insufficient to warrant the discipline that she received, and resulted from "a general discomfort on the part of Seward in working with an older subordinate[,]" Doverspike points to a positive performance evaluation Seward gave Tornabene in October 2014, which was followed later in 2014 and early 2015 by negative views of plaintiff's performance, as evidence of Seward's "general discomfort" in working with Tornabene. (*Id*. at 1146.) But Doverspike does not rebut—or even address—the explanatory evidence advanced by defendant that Seward was a new supervisor to Tornabene when plaintiff was evaluated in October 2014, after having received no evaluation for two years,

and the issues with plaintiff's performance did not emerge and come to Seward's attention until later in 2014 and early 2015. (*See* Seward Dep. at 679, 806.)

Instead, Doverspike focuses on plaintiff's workload, outdated position description, unfamiliarity with the use of email, and defendant's failure to use progressive discipline.[10] The law does not require employers to make perfect employment decisions, however, or prohibit employers from making decisions with which others disagree. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quotation marks and citations omitted). The law only prohibits discriminatory employment decisions.

Moreover, plaintiff has advanced no evidence that Seward's and defendant's actions, even if they were imperfect, were not grounded in an honest belief that plaintiff was deficient in her performance and warranted the discipline imposed.[11] When an employer "'reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.'" *Immormino v. Lake Hosp. Sys., Inc.*, 127 F. Supp. 3d 829, 837 (N.D. Ohio 2015) (quoting *Chen,* 580 F.3d at 401 (internal quotation marks omitted)). A "laxer standard would move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a 'super personnel department, overseeing and second guessing

---

[10] The Court has ruled that Doverspike's opinion regarding progressive discipline is stricken. Moreover, plaintiff does not dispute that plaintiff was an unclassified employee not entitled to progressive discipline under Ohio law, and conceded at the hearing that there were no employees comparable to plaintiff who received progressive discipline when plaintiff did not. Rather, plaintiff argued at the hearing that "there was no reason not to [provide plaintiff with progressive discipline]." This, of course, is not the standard or the law.

[11] Seward conducted an investigation regarding plaintiff's performance prior to her termination. (*See* Seward Dep. at 778-79, 798-99, 802-05, 837-38.) Plaintiff does not take issue with Seward's investigation.

employers' business decisions." *Bender*, 455 F.3d at 627-28 (citing *Verniero v. Air Force Acad. Sch. Dist. No. 20,* 705 F.2d 388, 390 (10th Cir. 1983)).

In order to survive summary judgment, plaintiff must advance evidence from which a reasonable jury could conclude that defendant's reasons for terminating her are a pretext for unlawful age discrimination, and that age discrimination was the real "but for" reason for defendant's actions. *Scheick*, 766 F.3d at 529 (citations omitted); *see Bender*, 455 F.3d at 626 (citations omitted). Plaintiff has failed to do so.

The evidence advanced by plaintiff to rebut defendant's legitimate articulated reasons for discharging plaintiff does not provide a sufficient basis upon which a reasonable jury could conclude that defendant's stated reasons were pretextual, and age discrimination was the real "but for" reason that defendant terminated plaintiff. Indeed, plaintiff's expert provides a non-discriminatory explanation defendant's actions:

> [A]t the time of the performance appraisal, Seward lacked adequate training in performance appraisal. Seward also lacked adequate training in progressive discipline. Conducting performance appraisals and progressive discipline in an appropriate manner requires knowledge gained through training; knowledge that Seward lacked at the time of the actions involving Tornabene. *This lack of training is problematic from the perspective of the appropriate implementation of human resources management and in terms of the decisions that led to the termination of Tornabene.*

(Supp. Report at 1183 (footnotes omitted) (emphasis added).)

In addition to all of the other reasons previously discussed, Doverspike's own opinion that it was Seward's lack of training that impacted defendant's decisions regarding plaintiff's performance and led to her termination further reinforces the Court's conclusion that plaintiff has failed to advance evidence on the issue of pretext from which a reasonable jury could conclude

that age discrimination was the "but for" cause of defendant's discipline and termination of Tornabene. Accordingly, defendant is entitled to summary judgment on plaintiff's ADEA claim.

### IV. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is granted. This case is dismissed and closed.

**IT IS SO ORDERED**.

Dated: September 25, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**